J-S13003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SCOTT ANTHONY NANNI | |
| Appellant | No. 1578 WDA 2014 |

Appeal from the Judgment of Sentence August 18, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013141-2013

BEFORE: LAZARUS, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED MARCH 07, 2016**

Scott Anthony Nanni appeals from his judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction for 6 counts of sexual abuse of children – possession of child pornography.[1] After careful review, we affirm.

On September 10, 2013, Donny Bryant notified the police department that a netbook computer he had purchased from Nanni contained images of young girls in various sexual acts. Based on that information, the police secured a search warrant for the residence where Nanni was staying in

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6312(d)(1).

Sewickley.[2]   When they entered the house, Nanni, who was wearing women's underwear, a bra and a wig, ran down a hall away from the officers where he stepped behind a computer to undress.  The police read Nanni his ***Miranda***[3] rights which he signed and he consented to speak with them.  Nanni explained that he had an application on his computer that would pull pornography from the internet and, while that application sometimes pulled child pornography, he would only view adult pornography.   Nanni later admitted that he would sometimes, however, save the child pornography files on his computer.  The age-range of the children in those files was 6-to-14 years old.  An officer testified that Nanni admitted to wearing size 10 children's underpants which he would masturbate into while viewing the saved child pornography.

At trial, the court admitted into evidence 5 images and one video found on a hard drive from the Sewickley house.  Officers were not able to testify with regard to which of the nine hard drives found in the house had the images on it.  At trial Nanni testified that he did not remember signing a ***Miranda*** waiver; he also denied admitting to possessing or viewing child pornography.   N.T. Non-Jury Trial, 5/19/14, at 58, 60, 63.   Rather, he

_____

[2] Nanni was visiting a friend at the Sewickley house at the time he was arrested.  His main residence, however was in Granville, West Virginia, where he lived with his grandmother.

[3] ***Miranda  v.  Arizona***, 384 U.S. 436 (1966).

testified that the officers questioned him for several hours, repeating "the same questions over and over," *id.* at 59, and that the officers "misconstrued quite badly what [he] said." *Id.* at 65.

After trial, the court found Nanni guilty of all six counts of viewing/possessing child pornography and sentenced him to time served (339 days), to be followed by one year of house arrest and a five-year probationary tail. Nanni was also required to comply with the lifetime registration requirements under this Commonwealth's Sexual Offender Registration and Notification Act (SORNA).[4][5] Nanni unsuccessfully challenged the weight of the evidence in post-sentence motions. This timely appeal follows.

On appeal, Nanni presents the following issues for our review:

(1) Did the trial court abuse its discretion in denying Mr. Nanni's repeated requests for new counsel and APD Hudak's motion to withdraw when there were irreconcilable differences between client and attorney?

_____

[4] *See* 42 Pa.C.S. § 9799.10-9799.41. SORNA, the successor to Megan's Law II, was enacted on December 20, 2011, and became effective on December 20, 2012. Because Nanni was convicted after the effective date of SORNA, he is subject to its provisions. *See* 42 Pa.C.S. § 9799.13(1).

[5] Section 9799.14 of SORNA establishes a three-tiered system of specifically enumerated offenses requiring registration for sexual offenders for differing lengths of time. *Id.* Pursuant to section 9799.15(a)(1), a person convicted of a Tier I offense must register for 15 years. A Tier II offender must register for 25 years, while a Tier III offender, like Nanni, must register for the remainder of his or her life. 42 Pa.C.S. § 9799.15(a)(2), (a)(3).

(2)   Were the guilty verdicts against the weight of the evidence because Bryant's testimony was unreliable, the alleged confession was unrecorded and unspecific, and there was overwhelming evidence that Mr. Nanni did not possess child pornography?

Nanni first complains that the court improperly refused to permit Attorney Hudak to withdraw from his case, prior to trial, when he and his counsel had "irreconcilable differences that prohibited [him] from getting adequate representation." Appellant's Brief, at 19. Specifically, Nanni contends that he did not have enough time to discuss his case with Attorney Hudak or view his discovery.

> "A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P 122(C). To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him. *Commonwealth v. Spotz*, [] 756 A.2d 1139, 1150 (Pa. 2000) (citing *Commonwealth v. Tyler*, [] 360 A.2d 617, 619 (Pa. 1976)). The decision whether to appoint new counsel lies within the trial court's sound discretion. *Id.* (citation omitted).

*Commonwealth v. Wright*, 961 A.2d 119, 134 (Pa. 2008).

In open court on the morning of his scheduled trial, Nanni explained to the trial judge that, while he was incarcerated and awaiting trial on the instant charges, he "never had time, a chance to make any challenges to the evidence of anything" and "ha[dn't] had time to talk to [Hudak or] . . . prepare for a trial." N.T. Non-Jury Trial, 5/19/14, at 3. Counsel interjected that she had had four to five video conferences with Nanni prior to trial. Although Nanni admitted he did participate in these video conferences with Hudak, he claimed that he did not have his necessary "paperwork" with him

- 4 -

to adequately discuss his case. To allay his concerns, the trial judge permitted Nanni to meet with Attorney Hudak in his holding cell and prepare for trial for at least three hours prior to the 2:01 p.m. scheduled start of trial. The court found that this time was sufficient to allow him to prepare for a rather straightforward case in which three Commonwealth witnesses were called to testify and Nanni was the only witness for the defense.

Nanni relies upon **Commonwealth v. Tyler**, 360 A.2d 617 (Pa. 1976), to support his claim that counsel should have been removed due to irreconcilable differences. In **Tyler**, the defendant, charged with murder, requested that his court-appointed attorney be dismissed and that new counsel be appointed. The defendant cited irreconcilable differences of opinion between himself and counsel as to the manner in which his trial should be conducted. Counsel also acknowledged the existence of a difference of opinion, but advised the court that he was precluded from explaining the nature of the differences due to the attorney-client privilege. The trial court denied the defendant's request to appoint new counsel. As a result, the defendant chose to represent himself rather than permit appointed-counsel to represent him; the court ordered that counsel remain available for consultation and take proper and necessary steps on defendant's behalf throughout the proceedings. **Id.** at 618.

On appeal, our Supreme Court found that the trial court forced the defendant to either accept court-appointed counsel, or to represent himself. Accordingly, the Court concluded that this choice did not "comport with the

constitutional standards required to be met before a court may accept an alleged waiver of one's constitutional right to representation by counsel," *id.* at 620, and reversed the defendant's judgment of sentence and remanded the case for a new trial.

Instantly, this case is distinguishable from the facts of *Tyler*. While counsel did file a motion to withdraw from representing Nanni, citing "an irreconcilable breakdown in the attorney-client relationship . . . [which] has soured the [] relationship to the point where counsel of record can no longer, in good conscience, continue representing Mr. Nanni in this case," Motion to Withdraw, 5/12/14, at 1-2, counsel did not renew this motion on the day of trial. In fact, she proceeded to represent Nanni effectively and without objection after the court permitted her to meet with her client for three hours prior to trial so that they could review paperwork and go over trial strategy. *See* Trial Court Opinion, 7/20/15, at 6 (trial judge opined, "[w]hatever dispute between [Nanni] and Ms. Hudak, it did not impede [Nanni's] right to a fair trial and to effective counsel."); *see also Commonwealth v. Spotz*, 756 A.2d 1139 (Pa. 2000) (where defendant and counsel offer competing contentions as to readiness of defense counsel for trial, it is for trial court to decide whose portrayal of counsel's preparedness is more accurate).

The record supports the trial court's conclusion that Nanni did not demonstrate that he had an irreconcilable difference with Attorney Hudak that precluded her from adequately representing him. At most, Nanni's

concerns consisted of wanting to spend more time with counsel to prepare for trial. ***See Commonwealth v. Floyd***, 937 A.2d 494 (Pa. Super. 2007) (irreconcilable differences warranting appointment of new counsel do not exist where defendant merely alleges strained relationship with counsel, has difference of opinion in trial strategy, lacks confidence in counsel's ability, or where there is brevity of pretrial communications). We find that the court's decision to deny Nanni's request for a new attorney was not an abuse of discretion. ***Wright***, ***supra***.

In his next issue on appeal, Nanni challenges the weight of the evidence to support his convictions for possessing child pornography. Specifically, he alleges that Bryant's testimony was unreliable, Nanni's own confession was unrecorded and unspecific, and there was overwhelming evidence that Nanni did not possess child pornography.

In Pennsylvania, the standard of review for an appeal challenging the weight of the evidence is well-settled. The finder of fact is the exclusive judge of the weight of the evidence and is free to believe all, part, or none of the evidence presented. ***Commonwealth v. Cruz***, 919 A.2d 279, 281-82 (Pa. Super. 2007). Additionally, the finder of fact determines the credibility of the witnesses. ***Id.*** In reaching its decision, it is the duty of the finder of fact to reconcile inconsistent testimony and resolve any inconsistencies. ***Commonwealth v. Manchas***, 633 A.2d 618, 624 (Pa. Super. 1993).

The relief sought in a weight of the evidence challenge is the award of a new trial. However, the Supreme Court of Pennsylvania has held a new trial should only be granted if the finding was against the weight of the evidence and is so contrary to the evidence that it shocks one's sense of justice. *Commonwealth v. Whitney*, 512 A.2d 1152, 1155-56 (Pa. 1986). Where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Id.*

The Pennsylvania Crimes Code defines the crime of possession of child pornography as follows, "any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa.C.S. § 6312(d)(1).

Instantly, Nanni acknowledges in the argument section of his brief that the evidence that Bryant provided "was immaterial to the six charges at issue." Appellant's Brief, at 26. In fact, Nanni's conviction was supported by evidence gathered during the execution of the search warrant and subsequent investigation of his computer, two cabled hard drives, as well as his own confession of having viewed child pornography. While Bryant may

have alerted officers to the fact that Nanni was potentially doing something illegal, the charges were brought solely based evidence uncovered as a result of the subsequently secured search warrant, not upon anything Bryant told the police.

We find that the trial court did not palpably abuse its discretion in ruling on Nanni's weight claim. **Champney**, **supra**. Officers uncovered more than 1,700 child pornography videos and 490 files containing verified images of known child victims on Nanni's desktop computer. The computer contained two user accounts. One of the accounts, named "NVZ," was logged on at the time of the search and was password-protected. Nanni admitted that he used the name "NVZ" on his computer and was able to type the password into the computer to access that account. Once they were signed on, Nanni directed the officers to a folder entitled "x" that contained child pornography. Under the "NVZ" profile, officers also uncovered a West Virginia driver's license in Nanni's name, Comcast cable bills in Nanni's name at the West Virginia address, a copy of Nanni's resume, and a certification for a computer operating system class in Nanni's name.[6]

Although Nanni argues that he never confessed to possessing or viewing child pornography, the evidence presented by the Commonwealth

_____

[6] A computer forensics examiner testified that the person who set up the computer and cabled hard drives, which contained the subject images and videos, was more technically sophisticated than an average computer user. Nanni had told officers that he fixes computers for a living.

contradicts his position. Officer Roberts testified that Nanni admitted to having viewed child pornography that was stored in folders on his computer, that he masturbated to the pornography in size-10 children's underwear and that he saved pornographic images of children aged 6-14 on his computer. Because it was the trial judge's duty to reconcile inconsistent testimony and resolve any such inconsistencies, **Manchas**, **supra**, we conclude that the trial court did not abuse its discretion in concluding that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2016